Filed 3/21/24  In re I.B. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re I.B., a Person Coming Under the Juvenile Court Law. | B328681 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 22CCJP04643A) |
| Plaintiff and Respondent, | |
| v. | |
| N.B., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Nancy Ramirez, Judge.  Affirmed.

Michelle D. Peña, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

N.B. (Mother) and M.B. (Father) are the parents of their six-year old daughter I.B. (Minor).[1]  The juvenile court took dependency jurisdiction over Minor on various grounds including domestic violence between the parents, Father's sexual abuse of Minor, and Mother's failure to protect Minor from that sexual abuse.  Mother challenges only the court's finding that she did not protect Minor from sexual abuse.  We consider whether we must discuss that finding in light of the other unchallenged jurisdiction findings against Mother.

## I.  BACKGROUND

*A.      The Dependency Investigation and Petition*

On Sunday, August 28, 2022, Mother picked Minor up from Father's home after a visit.  Mother noticed Minor seemed upset and was tugging at her shorts.  Minor revealed Father digitally penetrated her vagina, and Mother took Minor to the emergency room.

Minor advised the treating doctor that, while napping at Father's home, she awoke to find Father touching her vagina.  Minor advised that this was the first time Father had touched her inappropriately.  Although the genital examination revealed no abrasions or lacerations, the doctor repeatedly advised Mother that the absence of such findings did not indicate an absence of abuse—a fact that Mother appeared to have difficulty accepting.  The hospital reported the matter to the local authorities.

In a police interview the following day, Minor related the same facts she told the doctor.  Mother told the police officer she thought Minor was not telling the truth.

---

[1]      This was Minor's age when dependency proceedings began.

Two days later, a social worker from the Los Angeles County Department of Children and Family Services (the Department) interviewed Mother and Minor. Although Mother said she arranged for Minor to see a psychologist in connection with the alleged sexual abuse, she told the social worker she questioned the veracity of Minor's account due to the absence of any confirming evidence from the hospital's medical examination. Separately, Mother admitted she and Father had engaged in domestic violence while they were living together and that on one occasion she had "slapped the shit" out of Father. Mother advised the domestic violence was the reason why she and Father were no longer in a relationship. Mother added that Father had a history of "alcohol intoxication."

When speaking to the social worker, Minor revealed she had also been sexually abused by Father on a prior occasion at a hotel. She provided a description of what happened in detail and said she had been too scared to tell anyone about the prior incident of sexual abuse. When asked about other forms of abuse, Minor advised Mother would "sometimes" spank her with a brush and demonstrated Mother's technique by striking a stuffed animal ten times.

The Department also interviewed Father, who denied the sexual abuse allegations. He did admit, however, that his relationship with Mother had involved domestic violence and led him to obtain a restraining order against Mother in October 2021 following a physical assault against him at a restaurant that Minor witnessed (and for which Mother was arrested). Father said he believed Mother physically abused Minor because the child would appear for visits with bruises on her upper legs and

would complain that Mother "beat her up." Father denied drinking alcohol or suffering from alcoholism.

In September 2022, Minor, accompanied by Mother, underwent a forensic medical exam. Mother told the examiner she was "not concerned" that Father sexually abused Minor and opined Minor's allegations of sexual abuse were "retaliation" against Father for not being with her more.[2] To the examiner, Minor related the same facts about the most recent incident of sexual abuse as she had to the emergency room doctor, the police, and the Department's social worker—adding that the digital penetration was "uncomfortable." Although the forensic examiner found "no acute healing injuries," she advised this "[did] not rule out sexual abuse" and opined such abuse is "highly suspected." The examiner concluded, "Given that patient has disclosed clearly and consistently to her mother, physicians at the hospital, and [the Department], there is high concern for sexual abuse."

In a follow-up interview with a Department social worker and under questioning by a forensic interviewer, Minor affirmed she was sexually abused by Father at the hotel but she claimed she lied about the more recent abuse that occurred while visiting Father's home. Minor advised she did not feel safe with Father and only sometimes felt safe with Mother.

In November 2022, the Department filed a filed a multi-count petition asking the juvenile court to assume jurisdiction over Minor under Welfare and Institutions Code section 300,

---

[2] During an interview following the forensic examination, Mother reaffirmed she did not believe Minor's allegations against Father.

4

subdivisions (a), (b)(1), and (d).[3]  The petition alleged in the subdivision (a) counts that Minor was at substantial risk of suffering nonaccidental physical harm as a result of Mother's physical abuse and the parents' history of engaging in violent altercations in Minor's presence.  The subdivision (b) counts alleged Minor was at substantial risk of serious physical harm from Father's sexual abuse and Mother's failure to protect Minor from that abuse, from Mother's physical abuse of Minor and Father's failure to protect from that abuse, from the parents' history of domestic violence, and from Father's history of alcohol and substance abuse.  The subdivision (d) count alleged Father sexually abused Minor and Mother knew or reasonably should have known of the abuse and failed to take action to protect Minor.[4]

At the initial dependency hearing, the court detained Minor from Father, released her into Mother's care under the supervision of the Department, and ordered monitored visitation for Father.

---

[3]      Undesignated statutory references that follow are to the Welfare and Institutions Code.

[4]      The Department subsequently filed an amended petition that added to the subdivision (b) counts an allegation that Minor was at risk of physical harm as a result of Mother's history of emotional and mental problems.  Mother denied the new allegation.  At the combined jurisdiction and disposition hearing, the juvenile court struck the mental health allegation against Mother.

### B. Jurisdiction and Disposition

In advance of the jurisdiction and disposition hearing, Minor was re-interviewed by a Department investigator. Minor repeated what she recently said: Father sexually abused her at the hotel, she lied about being sexually abused by Father at his home, and Mother spanked her with a brush. Minor also described witnessing two separate incidents of domestic violence between her parents, one when Father punched Mother while drunk and another when Mother struck Father at a restaurant.

In Mother's interview with the Department investigator, she denied any knowledge about Father sexually abusing Minor. Mother did admit, however, that there were multiple incidents of domestic violence when Father was intoxicated, including one in 2019 when Father broke her nose. As before, Mother denied using a brush to spank Minor.

Father continued to deny sexually abusing Minor. Regarding domestic violence, he asserted Mother physically assaulted him on many occasions and he denied ever battering Mother. Father also described an incident in 2020 in which Mother physically attacked Minor's paternal grandmother after she intervened to stop fighting between him and Mother; Father explained the paternal grandmother filed a police report but she ultimately declined to press charges so Mother would not go to jail. Father additionally reiterated his belief that Mother physically abused Minor by pinching her, hitting her with a "heavy hand," and hitting her head with a brush.

The Department investigator interviewed the paternal grandmother N.B. (paternal grandmother) and she confirmed Mother physically attacked her in 2020. She also recounted

observing bruises on Minor's arms and recalled Minor said Mother had caused the bruises.

Based on its investigation, the Department urged the juvenile court to sustain the allegations against Mother and Father. The Department acknowledged Minor had vacillated to some degree when affirming and denying sexual abuse by Father, but the Department believed her detailed descriptions of the sexual abuse indicated she had been a victim of recent and past sexual assaults. The Department also opined Minor's description of physical abuse by Mother was credible and police reports revealed the "violent assaults between [M]other and [F]ather have been mutual."

The juvenile court held a combined jurisdiction and disposition hearing in April 2023 and heard testimony from Father, the paternal grandmother, and the Department's investigator. Father denied sexually abusing Minor or physically abusing Mother. Father testified that Mother, on the other hand, had physically abused him "hundreds of times" and Minor repeatedly told him that Mother physically abused her. Father denied currently consuming alcohol and admitted to only drinking a "little bit" during his relationship with Mother. The paternal grandmother testified she witnessed Mother physically attack Father, she had been physically attacked by Mother, but she was unaware of any sexual abuse of Minor by Father. Based on her experience interviewing hundreds of children similar in age to Minor in cases involving child sexual abuse, the Department investigator testified she found Minor's sexual abuse allegations credible.

After hearing argument, the juvenile court dismissed the section 300, subdivision (a) counts against Mother and Father.

The court sustained the section 300, subdivision (b) counts alleging sexual abuse by Father and failure to protect by Mother, physical abuse of Minor by Mother and failure to protect by Father, domestic violence between Mother and Father, and alcohol abuse by Father. The court also sustained the subdivision (d) count alleging sexual abuse by Father and failure to protect by Mother. In making its ruling, the court expressly found Father's testimony lacked credibility and Minor credibly claimed sexual abuse by Father, physical abuse by Mother, and violence between her parents.

The juvenile court ordered Minor removed from Father's care and placed in Mother's home under Department supervision. As part of their respective case plans, the court ordered Minor's parents to undergo individual counseling to address, among other things, anger management.[5]

## II. DISCUSSION

Mother challenges only the dependency findings that Minor was at risk of harm from her failure to protect from abuse by Father; she does not challenge the domestic violence and physical abuse findings that were directly adverse to her. In this situation, we need not consider the findings she challenges so long as any one of the jurisdiction findings adverse to her is supported by sufficient evidence. (*In re I.J.* (2013) 56 Cal.4th 766, 773 ["When a dependency petition alleges multiple grounds

---

[5] In October 2023, the juvenile court terminated jurisdiction over Minor. The Department argues the appeal is accordingly moot, but for reasons of judicial economy, we resolve the appeal on other grounds.

for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence.  In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.'  [Citation]"]; *In re Ca.M.* (Mar. 18, 2024, B326320) ___ Cal.App.5th ___ [2024 WL 1153550].)  As we shall briefly explain, the domestic-violence-based section 300, subdivision (b)(1) finding is so supported.  So we do not consider the rest.

Section 300, subdivision (b)(1) authorizes a juvenile court to assume dependency jurisdiction over a child when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . .  [¶] (A) [t]he failure or inability of the child's parent or guardian to adequately supervise or protect the child . . . ."  We review the juvenile court's jurisdiction findings for substantial evidence, drawing "'all reasonable inferences from the evidence to support the findings . . . [and] review[ing] the record in the light most favorable to the court's determinations . . . .'  [Citations.]"  (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

Exposing children to domestic violence can support jurisdiction under section 300, subdivision (b)(1).  (*In re T.V.* (2013) 217 Cal.App.4th 126, 134-135 ["[T]he evidence showed the parents had a lengthy history of domestic violence, often requiring police intervention. . . . Even though T.V. had not been physically harmed, the cycle of violence between the parents constituted a failure to protect her 'from the substantial risk of encountering the violence and suffering serious physical harm or

illness from it'"]; *In re Heather A.* (1996) 52 Cal.App.4th 183, 193-194 [evidence of violence between father and stepmother, where at least one incident occurred in presence of minors, was sufficient for jurisdictional finding]; see also *In re Sylvia R.* (1997) 55 Cal.App.4th 559, 562 [children suffer secondary abuse from witnessing violent confrontations].)

On this record, there is substantial evidence Minor was at substantial risk of suffering serious physical harm from the violence between Mother and Father. It was undisputed the parents had a history of domestic violence—including at least two episodes of violence that took place in Minor's presence. It was also undisputed that Mother was at least sometimes the aggressor in the violent confrontations (including her assault of the paternal grandmother) and some of the violence required police intervention. Although the parents were no longer in a relationship, the risks to Minor from this violence had not dissipated. Mother and Father still saw and interacted with one another on a regular basis in connection with their joint parenting of Minor, and there was no evidence that, prior to the jurisdiction hearing, either parent had tried to prevent future domestic violence through counseling or other means such as anger management classes.

## DISPOSITION

The juvenile court's order is affirmed.


## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, Acting P. J.

We concur:



MOOR, J.



KIM, J.